Michael **FIORE**, Louis Morrell, John Katchmar, Joseph Yanora, Edward Guidutis, on Behalf of themselves, and on Behalf of all persons similarly situated who are presently members of Scranton, Pa. Local No. 229 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, who were members of the same and employees of Associated Transport, Inc. on January 31, 1964, Plaintiffs,

v.

**ASSOCIATED TRANSPORT, INC.**, a Delaware corporation, and General Drivers & Helpers Local Union No. 229 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and the Eastern Conference Joint Area Committee of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants.

Civ. No. 8874.

United States District Court
M. D. Pennsylvania.
June 30, 1966.

John R. Lenahan, John E. V. Pieski, Scranton, Pa., for plaintiffs.

Hugh J. McMenamin, Warren, Hill, Henkelman & McMenamin, Scranton, Pa., for Associated Transport, Inc.

Andrew Homanich, Scranton, Pa., Herbert S. Thatcher, Washington, D. C., for International and Local 229.

SHERIDAN, Chief Judge.

These are motions by the defendants, Associated Transport, Inc. (Associated), The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (International), and General Drivers & Helpers Local Union 229 (Local 229), an affiliate of International, to dismiss the complaint, or in the alternative, to stay the proceedings.[1]

Jurisdiction is based on Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C.A. § 185. Plaintiffs, members of Local 229, brought the action pursuant to. Rule 23(a) of the Federal Rules of Civil Procedure, on behalf of themselves and all persons similarly situated who are members of Local 229. The complaint alleges that International and Local 229 (sometimes referred to herein as the Union), in action with Associated, have accepted employees from the Binghamton, New York, terminal of Associated for employment at the Dunmore, Pennsylvania, terminal and have intermingled or "dovetailed" their seniority with that of the employees at the

Dunmore terminal; that this is a violation of plaintiffs' rights under a collective bargaining agreement[2] in effect between Local 229 and Associated; that plaintiffs complained to Local 229 and International which acted with fraud and in bad faith in processing their complaints and that this is a breach of their duty to represent their members fairly and impartially; that all defendants have discriminated against plaintiffs and their actions constitute unfair labor practices in violation of laws of the United States; that plaintiffs have exhausted Union remedies.

Specifically, plaintiffs allege that the men transferred from Binghamton are not within the scope of the contract; that if they are within its scope, defendants have violated Section 8(c)2 since there was no work transferred to Dunmore from Binghamton which was sufficient to justify the number of men whose seniority has been dovetailed, and that there was no work available within the intendment of this section to justify such dovetailing; that a decision of the Eastern Conference Joint Area Committee[3] which permitted the dovetailing is void because the Local 229 representative had no right to enter into an agreement (a part of the decision) and, in fact, he never signed the agreement; that the chairman of the committee was not properly selected; that the agreement is in violation of Article 7, Section 4 of

1. A fourth defendant, The Eastern Conference Joint Area Committee, joined in the motion of International and Local 229. Subsequently, pursuant to a stipulation for dismissal, the court dismissed the action against this defendant.

2. The collective bargaining agreement, attached as Exhibit A to the complaint, is a multi-employer, multi-local union agreement known as "Central Pennsylvania Local Motor Freight Agreement."

Section 8(c)2 of Article 5, Seniority, provides:

"When a branch, terminal, division or operation is closed or partially closed and the work of the branch, terminal, division or operation is transferred to another branch, terminal, division or operation, in whole or in part, an employee at

the closed or partially closed down branch, terminal, division or operation shall have the right to transfer to the branch, terminal, division or operation into which the work was transferred if work is there available. The seniority of the transferring employees shall be intermingled or dovetailed with the seniority of the employees at the surviving terminal or operation. A new seniority list establishing the seniority of both groups of employees shall be posted and all bid jobs shall be reposted for bids."

3. While not stated in the complaint, it appears that this committee was convened pursuant to Section 2 of Article 7, Grievance and Arbitration, of the collective bargaining agreement.

the collective bargaining agreement; that even if the determination is valid, it has been improperly construed by Associated and Local 229; that all of these actions by defendants are in violation of seniority rights established by Sections 1–5 of Article 5 of the collective bargaining agreement. Plaintiffs pray for a declaratory judgment defining their seniority rights, and a judgment of money damages for lost employment.

Local 229 and International moved to dismiss the complaint on the grounds that the court lacks jurisdiction over the subject matter, and the plaintiffs have no standing to sue because only the Union has the right to bring and process grievances; and to dismiss the complaint or to stay the proceedings pending arbitration because the claimed breach of contract is a matter subject to arbitration under the terms of the collective bargaining agreement. Associated filed a separate motion in which it joined in the motion of the Union.

The defendants argue that even though the complaint alleges breach of a collective bargaining agreement, the gravamen is that the Union has failed to properly represent the plaintiffs in their grievances over seniority, an unfair labor practice, that exclusive jurisdiction is in the National Labor Relations Board (NLRB), which prevents the exercise of authority by all other entities even as to matters properly within their jurisdiction.

In Humphrey v. Moore, 1964, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370, the plaintiffs, members of a union, brought a class action against their union and the company. They alleged that a decision of the Joint Conference Committee, dovetailing seniority of the company by whom they were employed with that of another company, violated their rights under a collective bargaining agreement; that the Committee exceeded its power and that the decision of the Committee was brought about by dishonest union conduct in breach of its duty of fair representation. In passing on whether the court below had jurisdiction under Section 301 of the LMRA, the Court said:

"* * * this action is one arising under § 301 of the Labor Management Relations Act and is a case controlled by federal law, * * * even though brought in the state court. * * *. Although there are differing views on whether a violation of the duty of fair representation is an unfair labor practice under the Labor Management Relations Act, it is not necessary for us to resolve that difference here. *Even if it is*, or arguably may be, an unfair labor practice, the complaint here alleged that Moore's discharge would violate the contract and was therefore within the cognizance of federal and state courts, * * * subject, of course, to the applicable federal law.[6]

In Smith v. Evening News Ass'n, 1962, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed. 2d 246, plaintiff brought a class action in the state court against his employer alleging violation of non-discrimination provisions of a collective bargaining agreement by payment of wages to non-union employees while other employees, members of a non-striking union, were not permitted to work because employees of another union were on strike. The trial court dismissed the action for lack of jurisdiction because the allegations showed an unfair labor practice within the exclusive jurisdiction of the NLRB. The state Supreme Court affirmed. The

6. "We note that in Syres v. Oil Workers International Union, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 individual employees sued the exclusive agent and the company to enjoin and declare void a collective bargaining agreement alleged to violate the duty of fair representation. Dismissal in the trial court was affirmed in the Court of Appeals. This Court reversed and ordered further proceedings in the trial court in the face of contentions made both in this Court and the lower courts that the employees should have brought their proceedings before the National Labor Relations Board. * * *" (Emphasis supplied.)

Supreme Court of the United States reversed.

" * * * The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301. * * *"

Here, the complaint alleges a violation of rights guaranteed under a collective bargaining agreement as well as unfair labor practices and jurisdiction is properly in this court. Bieski v. Eastern Automobile Forwarding Co., D.Del.1964, 231 F.Supp. 710; Mandel v. Highway And Local Motor Freight Drivers, etc. Union, S.D.N.Y.1964, 246 F.Supp. 805; Cf. Adams v. Budd Co., 3 Cir. 1965, 349 F.2d 368.

█ Defendants attempt to distinguish Humphrey. They say the basic cause of action was for breach of a collective bargaining agreement which was identical and inseparable from a cause of action for breach of fair representation and, therefore, the court did not pass upon the preemption argument because the two causes merged. This attempted distinction is without merit. In Humphrey, the Supreme Court made no finding of or distinction involving inseparability of claims. The summary of the complaint, 375 U.S. at page 340, 84 S.Ct. 363, indicates that the allegations are similar to those in the instant complaint in that it is alleged that a union representative through "false and deceitful action" and in conjunction with others failed to represent plaintiffs in a dispute on dovetailing; that the international union conspired with the local union in bringing about the result complained of; and that the decision of a Joint Conference Committee which had decided the matter was arbitrary and violative of the collective bargaining agreement. Thus, even if the "inseparability" argument had substance, the complaint in this action shows causes which are as inseparable as those in

Humphrey.[4] The plaintiffs in this case, as in that, complain about certain action taken with respect to rights under a collective bargaining agreement. Moreover, even if unfair labor practice was the principal cause of action, it would not oust this court of jurisdiction because a violation of a collective bargaining agreement was also charged. In referring to cases dealing with alleged violations of a collective bargaining agreement, the Court said in Smith:

" * * * In Lucas Flour [Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593] as well as in Atkinson [Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462] the Court expressly refused to apply the preemption doctrine of the Garmon case; and we likewise reject that doctrine here where the alleged conduct of the employer, not only arguably, but concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board. * * *"

█ Defendants next argue that even if the court has jurisdiction under Section 301 of the LMRA, where the agreement makes the union the processor of grievances, individual members have no standing to invoke Section 301 for claimed breach of contract, but instead are relegated to the remedy under the National Labor Relations Act for breach of duty of fair representation. Defendants argue that in Smith the Court expressly left open the issue of standing which should be decided by reference to the terms of the collective bargaining agreement; that in Humphrey the Court did not determine the issue of standing in an agreement which reposes responsibility for the processing of grievances in the union; that the issue, therefore, has never been passed upon by the Supreme Court; and that certain authorities, particularly Black-Clawson Co., Paper Mach. Division v. International Ass'n of Machinists, 2 Cir. 1962, 313 F.2d 179, hold that individual members have no stand-

4. See also Mandel v. Highway And Local Motor Freight Drivers, etc., Union, supra.

ing to attack interpretative decisions of the contracting parties where the right to do so has not been accorded them by contract. They quote extensively from Section 1 of Article 7, Grievance and Arbitration, of the agreement to show that power to adjust grievances is vested in the union, not its members.

It is true that in Smith the Court did not pass on the issue of standing which had not been raised, pointing out that no clause but that dealing with non-discrimination was set out in the record. In Humphrey, however, the Court had before it an agreement which contained grievance and arbitration provisions, similar to those in the instant case, where the union had full responsibility for the processing of grievances and interpretation of provisions. Yet the individual members' suit was permitted. In concurring in part with the majority, Mr. Justice Harlan stated:

"* * * Although it is undoubtedly true as a general proposition that bargaining representatives have power to alter the terms of a contract with an employer, the challenge here is not to a purported exercise of such power but to the validity of a grievance settlement reached under proceedings allegedly not authorized by the terms of the collective agreement. Moreover, a committee with authority to settle grievances whose composition is different from that in the multiunion-multiemployer bargaining unit cannot be deemed to possess power to effect changes in the bargaining agreement. When it is alleged that the union itself has engaged or acquiesced in such a departure from the collective bargaining agreement, I can see no reason why an individually affected employee may not step into the shoes of the union and maintain a § 301 suit himself."

Black-Clawson Co., Paper Mach. Division v. International Ass'n of Machinists, supra, is distinguishable. The employer sought against one Best and the union a declaratory judgment that a dispute which arose from the firing of Best was not arbitrable under the terms of the collective bargaining agreement. Best and the union requested a dismissal of the complaint as well as affirmative declaratory relief and an order compelling arbitration. On cross-motions for summary judgment, the district court restrained Best and the union from taking action to compel arbitration; it held that Best had no right under the contract as an individual to compel arbitration; it also held that neither Best nor the union complied with conditions precedent to arbitration. Only Best appealed. The Court of Appeals held that only the union and not Best could compel arbitration. It can readily be seen that the union was not acting adversely to Best's interests. There was no allegation by Best that the union, entrusted with protecting rights secured to its members under the agreement, was acting in bad faith. Plaintiffs here have standing to sue. See Bieski v. Eastern Automobile Forwarding Co., supra; Mandel v. Highway And Local Motor Freight Drivers, etc., Union, supra; cf. Woodward Iron Co. v. Ware, 5 Cir. 1958, 261 F.2d 138.

Finally, defendants argue that the claimed breach of agreement and resulting damages present issues different from those processed through the grievance and arbitration machinery pursuant to the original grievance over dovetailing; and that the plaintiffs, therefore, must avail themselves of the grievance and arbitration provisions on these issues. They request that the complaint be dismissed or the action stayed.

█ In Mandel v. Highway And Local Motor Freight Drivers, etc., Union, supra, it was alleged that the Union breached its duty in good faith to prosecute certain grievances concerning rights secured to the employees under a collective bargaining agreement. The court referred to the union's board authority as *exclusive* bargaining agent and the duty of the union under the agreement to enforce the rights of the individual employee.

"Denial is evermore burdensome when the union is in the sole possession of the mechanism for vindication

of his rights. The courts have recognized that to require an employee to submit an issue to the grievance procedure when, as here, he has alleged failure of the union to prosecute his claim, as well as his past futility over many years of effort to have his claim adjusted, is to force him to entrust his representation to the very union which he claims refused him fair representation. Such judicial direction is not available. * * * [5]

■ Defendants contend that the complaint includes only general allegations of collusion, bias and prejudice; that specifics in support of these allegations are lacking; and that such conclusionary allegations are not sufficient to permit plaintiffs to bypass the established grievance procedures. This is answered in Mandel v. Highway And Local Motor Freight Drivers, etc., Union, supra.

"* * * the absence of an underlying recital of the instances where lack of good faith has been demonstrated is not adequate cause to dismiss the complaint.

"Under the new rules of civil procedure, required only is a short statement showing that the pleader is entitled to relief and that the adversary party is sufficiently advised to prepare his defense. * * *

"'A complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.' * * * "

Discovery is available to defendants.

■ Defendants cite Drake Bakeries Inc. v. Local 50, American Bakery, etc., Workers, 1962, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474; Local Union 721, United Packinghouse, etc., Workers, AFL-CIO v. Needham Packing Co., 1964, 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680; and Minnesota Joint Board, Amalgamated Clothing Workers of America v. United Garment Mfg. Co., 8 Cir. 1964, 338 F.2d 195, for the proposition that any grievances which have not been arbitrated and which are within the purview of a broad arbitration clause must be submitted to arbitration before the courts will intervene. These cases are clearly distinguishable. In each, the controversy was between the union on one side and the company on the other. In Republic Steel Corp. v. Maddox, 1965, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, the court recognized that as a general rule individual employees wishing to assert contract grievances must use the grievance procedure agreed upon by employer and union. The court also recognized that there may be situations which justify an exception.

"* * * If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370. * * *

"In any event, the case is before us on stipulated facts; in neither the facts nor the pleadings is there any suggestion that Maddox could not have

5. Cf. Humphrey v. Moore, supra, where the contract also included a broad arbitration clause and the matter of breach of agreement apparently was not submitted to arbitration.

"We also put aside the union's contention that Art. 7, § (d)—providing that all matters of interpretation of the agreement be submitted to the Joint Conference Committee—makes it inescapably clear that the committee had the power to decide that the transfer of operating authority was an absorption within the scope of § 5. But it is by no

means clear that this provision in Art. 7 was intended to apply to interpretations of § 5, for the latter section by its own terms appears to limit the authority of the committee to disputes over seniority in the event of an absorption. Reconciliation of these two provisions, going to the power of the committee under the contract, itself presented an issue ultimately for the court, not the committee, to decide. Our view of the scope and applicability of § 5, infra, renders an accommodation of these two sections unnecessary."

availed himself of the grievance procedure. * * *"

Plaintiffs' allegations that the Union pressed their claims in bad faith justifies their resort to court action.

The motions will be denied.